
FILED
Scott L. Poff, Clerk
United States District Court

By tblanchard at 9:33 am, Jan 28, 2019

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | |
|---|---|
| THOMAS FOLMAR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   CV417-126 |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Thomas Folmar seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance (DIB) and Supplemental Security Income (SSI) benefits.

## I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's

decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2

Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II.   ANALYSIS

Folmar, who was 36 years old when his DIB and SSI claims were denied, alleges disability beginning on November 29, 2012.  Tr. 17 & 293.  He has a high school education and past relevant work experience as a trucker.  Tr. 26 & 44. After a hearing, the ALJ issued an unfavorable decision.  Tr. 17-28.  He found that Folmar's status post-traumatic brain injury and mild neurocognitive disorder constituted severe impairments but did not meet or medically equal a Listing.  Tr. 19-21.  The ALJ thus found that Folmar retained the RFC for light work except he could only perform work with an SVP[2] of 2 "involving few changes, no working at heights or around hazardous machinery, only occasional driving, and no climbing ladders, ropes, or scaffolds."  Tr. 22. Plaintiff, he determined, could not perform his past relevant work but

---

[2]   Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, App. C.  An SVP of 2 would require "[a]nything beyond short demonstration up to and including 1 month" for a worker to learn their duties.

3

could perform the requirements of representative work such as office cleaner and hand packer, both light work with an SVP of 2. Tr. 27. Folmar disagrees, arguing that the ALJ erred in his evaluation of the medical testimony, plaintiff's credibility, and the Listings. Docs. 10 & 15.

A. **Folmar's Subjective Testimony**

The ALJ found Folmar less than fully credible because his statements regarding the extent and duration of the limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. Plaintiff contends, in a single-sentence argument, that this reason was not specific enough to uphold the ALJ's credibility finding. Doc. 10 at 9; *see also* doc. 15 (plaintiff's reply brief, which does not argue the matter at all). Of course, a plaintiff "waive[s] all challenges to the ALJ's decision except the one[s] briefed." *Jones ex rel. Martensen v. Colvin*, 2015 WL 4770059 at * 3 n. 3 (S.D. Ga. Aug. 12, 2015) (citing *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App's 855, 856 n. 1 (11th Cir. 2013)). And this Court will not, on its own, hunt down any such reasons. *See, e.g. United States v. Dunkel*, 927 F.3d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for

4

truffles buried in briefs."). Plaintiff has not even *hinted* at any error in the ALJ's credibility assessment.

Indeed, the ALJ evaluated the record *at length*. Tr. 22-26. The ALJ noted, among other things, that the medical evidence reflected Folmar's dramatic improvement following his accident, in balance, right-sided weakness, strength, mood, and neurocognitive ability. Folmar no longer requires physical therapy, has only slightly decreased strength in his lower extremity and full strength in his other extremities, has been cleared to drive his personal vehicle, no longer requires a cane to ambulate (though he uses it "at times" while fatigued), engages in a wide variety of activities of daily living and is essentially independent in self-care (though his wife helps him shave). Tr. 23. Folmar, indeed, has expressed interest in returning to school, and is prevented solely by funding — rather than functional capacity — issues. Tr. 24. He receives only minimal treatment, with his pain managed by anti-inflammatory medication and his mental impairments managed by an antidepressant. Tr. 25. In sum, "[t]he totality of the evidence is not consistent with pain and/or other symptoms of severity, frequency or duration that would preclude all work activity." *Id*.

The ALJ did not err in discounting plaintiff's statements regarding the intensity, persistence, and duration of the limitations imposed by his symptoms, *see both* SSR 96-7p *and* SSR 16-3p, and his credibility finding should be affirmed.

### B. Michael A. Taormina, M.D.

In a checklist form, Dr. Taormina opined that plaintiff could lift and carry up to 100 pounds occasionally and would have some handling/fingering/feeling/push/puling limitations due to his "mild" right hand weakness and numbness, could sit 8 hours in an 8 hour day and walk/stand 6 hours in an 8 hour day due to his "mild" right leg weakness, and would not need a cane to ambulate but would have some postural and environmental limitations. Tr. 637-42. During his consultative examination, Dr. Taormina briefly observed that plaintiff "is able to perform [ ] normally except for: adapt, concentrate, manage personal finances and remember." Tr. 645. That diagnostic observation, however, didn't make it to his functional capacity evaluation. *Compare* tr. 637-42 *with* tr. 645.

The ALJ gave significant weight to Dr. Taormina's opinion that plaintiff could stand, walk, and sit consistent with light work, with a

restriction from climbing ladders or scaffolds, working at unprotected heights, and driving motor vehicles more than "occasionally." Tr. 25, citing tr. 637-42. He found these opinions consistent with other medical evidence in the record and "well supported" by Dr. Taormina's own examination notes. *Id*. The ALJ discounted, however, Dr. Taormina's opinion that plaintiff could lift and carry consistent with medium/heavy work, given plaintiff "history [of] physical trauma, recovery, and current exams." *Id*. After recapitulating Taormina's findings, plaintiff contends that the ALJ erred by failing to discuss Dr. Taormina's finding regarding his ability to "adapt, concentrate, manage personal finances and remember." Doc. 10 at 9; doc. 15 at 1-4.

The Commissioner responds that the ALJ *did* consider these findings, and indeed ordered a neuropsychological consultation to flesh out the record regarding these symptoms. Doc. 14 at 8, citing tr. 38-39 (during the administrative hearing the ALJ determined a consultative examination was necessary); *see* 42 U.S.C. § 421(h) (the Commissioner must "ma[k]e every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.").

Indeed, such a vague opinion — that plaintiff has some restriction, undefined, in his ability to "perform normally" — *cannot* be considered a valid limitation. Thus, a consultative neuropsychologist, Dr. William Corey, examined plaintiff and opined that he had unimpaired ability to understand, remember, and carry out simple instructions and to interact with coworkers, supervisors, or the public; mildly impaired ability to make judgments on simple work-related decisions and adapt to workplace stressors; and moderately impaired ability to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions, and sustain attention for extended periods of time. Tr. 24, citing tr. 662-71. Dr. Corey also found plaintiff could manage his benefits in his own best interest. Tr. 664.

Plaintiff, apparently, wants the Court to credit Dr. Taormina's imprecise mental limitations, jotted down during a consultative examination of his physical impairments, over the more detailed limitations opined to by the consultative neuropsychologist. He offers no *argument* for why the Court ought to do such a thing, nor does he even hint at the impact it would have on the ALJ's RFC assessment. *See* docs. 10 & 15. After all, the ALJ assessed Folmar as retaining only the RFC

to perform work requiring an SVP of 2, which is *consistent* with a limitation to simple, repetitive work. *Lane v. Berryhill*, 2017 WL 976923 at * 7 (S.D. Ga. Feb. 16, 2017) (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding an RFC restriction to "simple, routine, or repetitive work" consistent with reasoning level 2, but not level 3); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (same); *and Money v. Barnhart*, 91 F. Appx. 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive")).

It is unclear how vague deficits in plaintiff's ability to adapt, concentrate, manage personal finances and remember exceed or supplant those more exact limitations opined to by Dr. Corey and incorporated into the RFC assessment, limiting plaintiff to jobs at an SVP of 2. And the Court will not now hypothesize what limitations Dr. Taormina might have discerned. The ALJ did not err in failing to credit a vague clinical observation that was obviated and superseded by the concrete limitations opined to by a neuropsychological consultative examiner.

### C. Listings 12.02 and 11.18

The ALJ first determined that there were "insufficient findings on

clinical examinations or diagnostic testing to form the presence of [Listings] 1.00, 11.00, 12.00 or any other section of Appendix I, Subpart P of Regulations No. 4." Tr. 20. The ALJ then considered whether Folmar met or equaled Listings 12.02 and 12.04, but found he met the criteria for neither. *Id.* In his brief, plaintiff argues — yet again — in a single sentence that the ALJ erred by not finding that he met Listing 11.18 (cerebral trauma). Doc. 10 at 10. Indeed, he then sets forth the standard for Listing 12.02 (organic mental disorders). *See id.* To the extent plaintiff hoped to mount some challenge to the ALJ's finding on Listing 11.18, he has obviously waived it. *Jones*, 2015 WL 4770059 at * 3 n. 3. He also fails to discuss, even briefly or conclusorily, the ALJ's evaluation of Listing 12.02B, 12.02C(1), or 12.02C(2). *See* doc. 10 at 10-11; doc. 15. Those too, then, are waived. *Jones*, 2015 WL 4770057 at * 3 n. 3.

The ALJ concluded Folmar failed to meet Listing 12.02C(3), which requires (1) a "[m]edically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" and a "[c]urrent history of 1 or more years' inability to function outside a highly

supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02C. Plaintiff does contend that the ALJ erred because he

> has an organic mental disorder (that is, a "behavior abnormalit[y] associated with a dysfunction of the brain"). His ability to do basic work activities, such as walk for hours, lift and carry, remember detailed instructions, and analyze, have been more than minimally limited. For example, at a 7/28/2013 follow up appointment after the hospital care, [Folmar] was noted to still have memory problems, decreased endurance, right-sided weakness with difficulty walking and with balance when fatigued. [Cite omitted]. [Folmar's family provides a highly supportive living arrangement which he needs to overcome his limitations.
>
> The ALJ erred in not considering whether the medical evidence of organic mental disorders, combined with the medical records and testimony showing the above-enumerated limitations, was sufficient to show Listing 12 was met.

Doc. 10 at 10-11.

Despite being the nearest-to-complete argument offered in his briefs, this argument too fails. After all, Listing 12.02C(3) requires a claimant to demonstrate that he is unable to function outside a highly supportive living arrangement. Folmar, meanwhile, engages in significant, *independent* activities of daily living. The most he depends on others is his wife to help him shave and friends to provide company when he dines out. Tr. 20. He can prepare simple meals without significant assistance,

clean up after himself and performs chores, shop by himself (though he usually goes with a friend for transportation reasons, despite being cleared to drive his personal car), and concentrate on video games and movies for one to two hours. *Id.* Plaintiff has not approached a showing that he is unable to function without his family's assistance, sufficient to meet Listing 12.02C. *See, e.g., Sounders v. Comm'r of Soc. Sec.*, 2014 WL 533498 at * 4 (S.D. Ohio Feb. 11, 2014); *McCray-Keller v. Colvin*, 2013 WL 5467201 at * 11 (E.D. Cal. Sept. 30, 2013).

In sum, plaintiff has not shown that the ALJ erred in his assessment of plaintiff's mental health functioning.

### III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Given the lapse in government appropriations, this matter has been stayed by the district judge. Doc. 16. Therefore, within 14 days of the lifting of the administrative stay in this case, any party may file written objections to this R&R with

Case 4:17-cv-00126-WTM-CLR   Document 17   Filed 01/28/19   Page 13 of 13

the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this  25th  day of January, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA